

**FILED**
**Jun 05, 2018**
**11:05 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT JACKSON

| | | |
|---|---|---|
| **RICKY POLK,** | ) | **Docket No. 2017-07-0644** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 40864-2017** |
| **DELTA FAUCET,** | ) | |
| **Self-Insured Employer.** | ) | **Judge Allen Phillips** |
| | ) | |

---

### EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

Mr. Polk requested medical benefits for an injury on May 22, 2017. Delta denied his request on grounds he falsified a drug test. The Court heard the contested issues at an Expedited Hearing on May 29, 2018. The Court holds Mr. Polk likely would prevail at a hearing on the merits regarding entitlement to some medical benefits.

### History of Claim

Mr. Polk claimed an injury as a result of a lift truck accident. He claims another lift truck backed into his, causing him to strike the frame of his truck. Mr. Polk said his "team leader," Jerry Minton, came to the scene immediately after the accident and he related the details of the accident to Mr. Minton. Mr. Polk did not immediately report any injury because he did not believe he was hurt.

Mr. Polk said he began feeling pain during his drive home that morning. He called Delta's Human Resources department to report his injury but never received a return call. When he reported for work that evening, he reported his injury to Andy Easchbach, his group leader. Mr. Polk contended that these conversations established Delta's awareness of his injury on the day of its occurrence.

Mr. Polk spoke with April Collins in Delta's safety department the next day, May 24. He voiced a desire to see a physician but received no response from Ms. Collins. So, he went to his personal physician who declined to see him because he was claiming

1

workers' compensation. Mr. Polk said he then continued to request a physician from his supervisor but Ms. Collins instead "set him up" with a "personal trainer" at Delta. He continued seeing the personal trainer for three weeks, all the while "telling his supervisor" he needed to see a physician. Finally, on June 7 or 8[1], Ms. Collins called Mr. Polk to arrange a doctor's appointment and Ms. Collins told him the appointment was set "a week and a half later."

Delta did not contest the occurrence or the logistics of the accident. However, Ms. Collins, Delta's workers' compensation coordinator, said she had difficulty contacting Mr. Polk to set a doctor's appointment. She left him several messages and finally "came in early" to see Mr. Polk at the end of his third shift. She said Mr. Polk first asked to see a physician on June 2, and she provided a panel of orthopedic surgeons. On June 7, Delta provided a second panel, consisting of general practice physicians, after Mr. Polk complained about the delay in seeing an orthopedic doctor. Prior to June 2, Ms. Collins said Mr. Polk was content to see the personal trainer who Ms. Collins explained helped employees with non-invasive therapy and over the counter medications.

On June 7, Ms. Collins scheduled a drug test during Mr. Polk's night shift. Delta uses a third-party testing agent who comes to the plant for testing because the panel physicians do not perform drug tests. She confirmed Delta was a part of the Tennessee Drug Free Workplace Program (DFWP) on May 22. She said the DFWP rules do not provide a specific time within which a drug test is to be performed.

Mr. Polk reported to work on June 7 and was called to the "front." There, an employee of WorkCare Resources, Delta's testing agent, asked him to submit to a urinalysis. Mr. Polk was given the opportunity to drink water and then entered the restroom. By his account, immediately upon producing a specimen, the testing nurse "busted into the bathroom" and grabbed the specimen cup. The nurse set the cup on the sink, left the room, and returned with another cup. The nurse then poured the first specimen into the second cup and told Mr. Polk the sample did not register the necessary temperature required for a valid test. The nurse allowed Mr. Polk to rehydrate before asking him to produce another specimen.

When Mr. Polk entered the restroom the second time, the nurse asked him to lift his shirt above the waist and lower his pants to mid-thigh. When Mr. Polk did so, the nurse observed a container of "yellow liquid" hidden in a sock inside Mr. Polk's underwear. According to Mr. Polk, the nurse said, "This test is over" and left the area. Delta terminated Mr. Polk's employment later that night.

---

[1] Mr. Polk worked on third shift at Delta so he reported to work on one day but finished the next, thus the dates used in this order reflect that overlap.

Eddie Holloway was the testing nurse. He explained Mr. Polk's first urine sample was cooler than the minimum temperature required for a valid sample, meaning it was likely not produced at the time of testing. Mr. Holloway "discarded" the sample but, before doing so, retrieved a second cup to show Mr. Polk that the temperature-measuring strip on the first cup had not failed; in other words, "for Mr. Polk's benefit," Mr. Holloway confirmed the urine's low temperature with the second cup. Mr. Holloway confirmed discovering the container of yellow liquid in Mr. Polk's pants and confirmed he then terminated the test. He said the testing that night, including termination of testing after discovering contraband, was performed according to protocol.

Mr. Polk admitted he concealed the urine container in his underwear. He explained he did so because he had used medications belonging to friends and family members to ease his pain. Because his late grandmother experienced dangerous drug interactions, Mr. Polk said he wanted to insure the drugs had "cleared" his body before receiving any drugs from Delta's physicians. So, he purchased several home drug testing kits and began "testing [himself] every four hours" beginning June 3. On June 7, Mr. Polk said he had just produced a specimen for his personal testing and placed it in his pocket when called to take the drug test. He said he placed the container in his pants because he knew that the nurse would ask him to "empty his pockets" and he assumed the nurse would accuse him of trying to "fake" the test when the container was discovered. He argued that if he were trying to falsify the test, then he would have used the concealed urine for the first sample.

Mr. Polk argued that if Delta had tested him immediately after the accident, then the questioned test would not have been an issue. He requested that Delta provide him a physician to completely evaluate all injuries sustained in the accident.[2] Delta maintained its denial based upon Mr. Polk's attempted falsification of the test, which it argued amounted to a refusal to test.

## Findings of Fact and Conclusions of Law

*Motion to continue*

The Court must address Mr. Polk's request for a continuance of the Expedited Hearing filed on Friday, May 25, the last business day before the hearing. As grounds, Mr. Polk stated: "Motion for continuance for more time to gather evidence to support my claim. I have just recently been contacted by an Ombudsman attorney (Mr. J. Hicks) and I would like to ask the court to grant me more time to attempt to collect more evidence to support my case."

---

[2] Mr. Polk saw the orthopedic surgeon he chose from the panel on one occasion under private insurance after Delta denied his claim. He stated the physician did not examine every body part that he injured in the accident. Mr. Polk requested temporary disability benefits in his Petition for Benefit Determination but admitted working full time at Delta after the injury at his regular wage until his termination.

3

The Court attempted to contact the parties on May 25 to no avail. Thus, the Court advised the parties it would hear the motion before the hearing on May 29. When the Court inquired as to what additional "evidence" he needed, Mr. Polk replied that he wanted video surveillance footage from Delta of both the aisle where the fork truck accident occurred and of the testing room. He contended the accident footage, if it existed, would show he "did not cause the accident." He contended footage of the testing room would show Delta compelled him to "take the drug test twice." The Court asked Mr. Polk three times if he sought any additional evidence apart from the videos to which he said, "No." During argument, Delta conceded the occurrence of the accident and that its drug testing agent did ask Mr. Polk to provide two specimens.

Practices and Procedures Rule 2.02B. provides that continuances of an Expedited Hearing must be supported by "good cause" as determined by the Judge. Here, the only basis for Mr. Polk's continuance motion was his request to obtain videos that, in the Court's discretion, had no bearing on his request for benefits. Delta did not contest either the accident or how it occurred. It did not deny Mr. Polk was asked to provide two urine specimens. Thus, Mr. Polk pointed to no additional evidence to adequately present his case. Moreover, he stated he spoke with an Ombudsman attorney for the first time on May *18*, one week before filing his motion at midday of the day before a holiday weekend. The Court found no cause to continue the hearing and ordered the parties to proceed.

*Illegal drug use defense*

Mr. Polk must present sufficient evidence from which the Court can determine he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2017). The Court holds he did so as to the requested medical benefits.

Delta asserted the defenses allowed it under the DFWP. Tennessee Code Annotated section 50-6-110(a)(3) provides that no compensation shall be allowed for an injury resulting from an employee's intoxication or illegal drug use. Because Delta was part of the DFWP, any drug use by an injured employee is presumed to be the proximate cause of his injury. A refusal to take a drug test creates the same presumption. Tenn. Code Ann. § 50-6-110(c)(1) and (c)(2). Mr. Polk may rebut either of these presumptions by "clear and convincing" evidence, meaning there is no serious or substantial doubt regarding the facts supporting rebuttal and they are "highly probable." *Teter v. Republic Parking Sys.*, 181 S.W.3d 330, 341 (Tenn. 2005). Here, the Court holds the presumption of proximate cause inapplicable because the test given Mr. Polk did not meet the requirements of the DFWP.

Initially, the Court finds Mr. Polk did attempt to manipulate the drug test of June 7 and therefore "refused" to take that test. Tennessee Code Annotated section 50-9-107(a)

4

provides that "all specimen collection and testing for drugs and alcohol . . . shall be performed in accordance with the procedures provided for by. . . 49 CFR [Code of Federal Regulations] part 40." CFR § 40.191 (10) provides that anyone who uses a "device that could be used to interfere with the collection process" is deemed to have "refused to take a drug test." Mr. Polk admits he possessed a container of urine on his person on June 7 and such action, by definition, establishes he "refused" the test on that day. Further, it finds his explanation of why he concealed the container implausible and a direct indictment of his credibility. Nevertheless, the Court finds the outcome turns not on Mr. Polk's credibility but, instead on the ill-timed administration of the drug test *sixteen* days after the incident of May 22.

Tennessee Code Annotated section 50-9-103(8) provides that a "drug test" is one administered pursuant to the "regulations governing drug testing adopted by the United States department of transportation or other recognized authority approved by rule by the commissioner of labor and workforce development." The version of Tennessee Compilation Rules and Regulations 0800-02-12-.05(5)(c) in effect on May 22, 2017, provided that "in the case of non-emergency injuries reported to the covered employee after the fact, the injured employee must submit to testing at the time the injury is entered into the covered employer's OSHA 200 Log or any authorized or required replacement for the OSHA 200 Log."[3] The OSHA regulations as of May 22, 2017 provided that an injury was work related if an "event . . . in the work environment either caused or contributed to the resulting condition" and "work-relatedness is presumed for injuries . . . resulting from events . . . occurring in the work environment." 29 C.F.R. § 1904.5 (2017).

Here, Delta did not contest the "event" of May 22 or that it occurred in the "work environment." Thus, the May 22 event triggered the provisions of the DFWP rules regarding when Delta must enter the injury for OSHA purposes. In turn, Delta should have administered the drug test to Mr. Polk at that time rather than sixteen days later on June 7.

The Court holds that the drug test of June 7, though manipulated by Mr. Polk, did not meet the requirements for drug testing under the applicable statute and rules of the DFWP. Thus, Mr. Polk is entitled to medical benefits in the form of a panel of physicians to evaluate his alleged injuries of May 22. See, *Lewis v. Merry Maid*, 2016 TN Wrk. Comp. App. Bd. LEXIS 19 (Apr. 20, 2016) (an employee was entitled to a panel when she reported a specific incident to two different supervisors and the employer did not refute that reporting).

**THEREFORE, THE COURT ORDERS** as follows:

---

[3] The rule governing post-accident drug testing was amended effective May, 2018 to provide no specific time for testing other than "after an accident that results in an injury to any employee." Tenn. Comp. R. & Reg. 0800-02-12-.05(5)(a)(effective May, 2018).

1. Delta shall provide Mr. Polk a panel of physicians pursuant to Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) to evaluate his injury of May 22, 2017.

2. This matter is set for a Status Hearing on **Monday, August 20, 2018, at 11:00 a.m. Central Time. The parties must call 731-422-5263 or toll-free 855-543-5038 to participate in the Status Hearing.**

**ENTERED this the 5th day of June, 2018.**

_____
**Allen Phillips, Judge
Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:

1. Affidavit of Ricky Polk
2. Panel of orthopedic physicians
3. Panel of general practitioners
4. Delta's Drug Free Workplace Application and Acceptance Confirmation
5. Drug Testing Custody and Control Form
6. Wage Statement

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Order Setting Case for Show Cause Hearing
4. Order Granting Additional Time Following Show Cause Hearing
5. Request for Expedited Hearing
6. Employer's Position Statement for Expedited Hearing
7. Employer's Witness and Exhibit List for Expedited Hearing
8. Employee's Motion for Continuance of Expedited Hearing
9. Employer's Response to Motion for Continuance
10. Certificate of Non-Representation (CNR)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 5th day of June, 2018.

| Name | First Class Mail | Via Email | Service Sent To: |
|---|---|---|---|
| Ricky Polk, Self-Represented Employee | X | X | 513 Reid Ave., Brownsville, TN 38012 rickypolk@gmail.com |
| Hailey David, Esq., Attorney for Employer | | X | davidh@waldrophall.com |

Penny Shrum, Clerk of Court
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**